**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

—————————————————————————
                                                                )
**LEON MARYLAND,**                                              )
                                                                )
                        **Plaintiff,**                          )
                                                                )
            **v.**                                              )          **Civil Action No. 14-1318 (RMC)**
                                                                )
**U.S. DEPARTMENT OF VETERAN**                                  )
**AFFAIRS,** *et al.*,                                          )
                                                                )
                        **Defendants.**                         )
                                                                )
—————————————————————————)

**OPINION**

Leon Maryland, proceeding *pro se*, brings suit against the U.S. Department of

Veteran Affairs (VA), Center for Verification and Evaluations (CVE) under the Freedom of

Information Act (FOIA), 5 U.S.C. § 552, seeking the release of records relating to the VA

website that serves as a federal government portal for veteran-owned businesses,

https://www.vip.vetbiz.gov/.  The VA has moved for summary judgment, and Mr. Maryland has

cross-moved for summary judgment.  For the reasons below, the Court will grant VA's motion

and deny Mr. Maryland's cross-motion.

**I.  BACKGROUND**

**A.  Facts**

CVE is an office within the VA's Office of Small and Disadvantaged Business

Utilization (OSDBU).  *See* VA Mot. for Summ. J. [Dkt. 42] (Def. Mot.), Supp. Decl. of Laurie

Karnay (Karnay Decl.) ¶ 5.  CVE

> seeks to enable service-disabled Veteran-owned small businesses
> (SDVOSB) and Veteran-owned small businesses (VOSB), to
> compete for and win contracts with VA.  CVE verifies applications
> submitted by Veteran small business owners interested in competing

> for Veteran set-aside procurement opportunities.  If approved,
> businesses are listed on the Vendor Information Pages (VIP), which
> is a database used by the VA Acquisition community to find firms
> for Veteran set-aside procurement opportunities.  CVE maintains
> the VIP "Vetbiz" database, which contains data on approved
> Veteran-owned companies, such as business addresses. . . . The
> information regarding businesses in the VIP database is regularly
> updated to reflect the current status of businesses that have applied
> for inclusion in the database.

*Id*.

Mr. Maryland has repeatedly requested "information regarding businesses that have applied, or have applications pending, for verification.  This includes those businesses that have been approved or denied, or that have withdrawn from, or been cancelled from, the verification program."  *Id*. ¶ 6.

Only two of Mr. Maryland's FOIA requests are the subject of this action: a FOIA request dated August 13, 2013 with an addendum dated August 22, 2013 (collectively, the August 2013 Request) which CVE assigned tracking number 13-06522-F, and a FOIA request dated November 5, 2014 (November 2014 Request) which CVE assigned tracking number 15-00846-F.  *Id*. ¶¶ 6, 9, 16.

### 1.  August 2013 Request

Mr. Maryland's August 2013 Request "included four parts, each of which consisted of a list of items of information about business applications that had applied to CVE for certification and inclusion in CVE's VIP database for a period 'within thirty (30) days before the date' that VA responded to the request."  *Id*. ¶ 9; *see* Karnay Decl., Ex. 1 (August 2013

Letter) at 18-21[1] and Ex. 2 (August 2013 Addendum) at 23-27.[2]  Mr. Maryland requested a fee

waiver for the August 2013 Request.  *Id.*, Ex. 3 (Fee Waiver Request) at 29-34.

       In response to Mr. Maryland's August 2013 Request, CVE explained that it was

withholding certain responsive records under FOIA Exemptions 3, 5, and 6 and directed Mr.

Maryland to www.vip.vetbiz.gov where the other requested information was publicly available.

*Id.*, Ex. 4 (September 2013 Determination) at 36-40.  CVE placed Mr. Maryland's request in the

commercial requester category and determined that the fees associated with "search, review,

duplication and mailing" would be $18,447.58.  *Id.* at 37.  CVE informed Mr. Maryland that he

was required to pay the fee before CVE would process his request.  *Id.*

       Mr. Maryland appealed CVE's September 2013 Determination to VA's Office of

General Counsel (OGC).  OGC issued its final administrative decision on November 26, 2013,

granting Mr. Maryland's appeal in part.  *See id.*, Ex. 5 (OGC's November 2013 Remand) at 42-

43.  OGC determined that "applicable law requires the release of the names and locations of

*businesses* which were denied inclusion in the VIP database."  *Id.* at 42.  OGC further concluded

that CVE's determination that Mr. Maryland was a commercial use requester required further

elucidation and that "CVE's fee determination was not made in accordance with the FOIA or

---

[1] Page references to exhibits to the Karnay Declaration correspond to the ECF page numbers of Docket 42-2.

[2] Mr. Maryland requested "18 items of data, for each Veteran-owned small business, service-disabled Veteran-owned small business, or Joint Venture applying for verification, in four separate categories: businesses approved for verification; businesses denied for verification, by means of a final denial letter; businesses denied for verification, by means of an initial denial letter; and businesses currently in the verification stage that have been scheduled or planned to be scheduled for an on-site inspection, 'within thirty days before the date [] [the] agency responds to this FOIA request.'"  *Id.*, Ex. 5 at 42.

VA's FOIA regulations." *Id*. at 42-43.  OGC remanded the case to CVE for further processing.  *Id.* at 43.

On remand, CVE conducted a *de novo* review of Mr. Maryland's August 2013 Request and issued its response on January 27, 2014.  *See id*., Ex. 6 (January 27 Letter Part 1) at 45-49; *id*., Ex. 7 (January 27 Letter Part 2) at 51-53.  CVE released certain responsive records and specified that the remaining items were publicly viewable, not maintained by CVE, or withheld pursuant to FOIA Exemption 5.  *Id*. at 46-47.  CVE again placed Mr. Maryland's request in the commercial requester category because his "response did not adequately satisfy the requirements to receive a Fee Waiver."  *Id*. at 45-46.  CVE reasoned that Mr. Maryland planned to disseminate the requested information through a private Facebook page and a closed email list so that only people invited by Mr. Maryland would have access to the information.  CVE contrasted Mr. Maryland to "representatives of the media [who] have full and open disclosure to all citizens."  *Id*. at 45.  CVE also justified placing Mr. Maryland in the commercial fee category based on his purported statement to a VA FOIA Office that it was important for him to receive the information as soon as possible because he had been paid for it and the payers were expecting him to deliver the information.  *Id*. at 46.  CVE informed Mr. Maryland that the revised fee estimate for processing his request would be $241.69.  *Id*.  However, CVE did not assess a fee because it had failed to comply with FOIA time limits for completing the search and was prohibited by regulation for charging a fee in such situation.  *Id*. at 46 (citing 38 C.F.R. Part 1).  CVE continued to withhold "individual names in email addresses that identified an individual under FOIA Exemption 6 and disclosed the remaining email addresses of initially or finally denied businesses."  Karnay Decl. ¶ 12.  CVE reasoned that "FOIA Exemption 6 . . .

protects all information which, if disclosed, would constitute a clearly unwarranted invasion of an individual's personal privacy." *Id.*, Ex. 7 (January 27 Letter Part 2) at 52.

On February 27, 2014, Mr. Maryland appealed parts of CVE's determinations on his August 2013 Request to OGC: (1) CVE's placement of his request in the commercial requester category and (2) CVE's decision to withhold personal names in email addresses under FOIA Exemption 6.  Karnay Decl. ¶ 15; *id.*, Ex. 8 (Second Appeal) at 55-71.  OGC had not acted on Mr. Maryland's appeal when he filed suit here in August 2014.  Karnay Decl. ¶ 15.  OGC must decide appeals within 20 working days of their receipt.  *See* 5 U.S.C. § 552(a)(6)(A)(ii).  Mr. Maryland is deemed to have exhausted his administrative remedies with respect to his appeal because OGC failed to comply with the applicable time provisions.  *Id*. § 552(a)(6)(C).

### 2.  November 2014 Request

Pursuant to his November 2014 Request, Mr. Maryland "requested fifteen items of information related to each Veteran-Owned Small Business, Service-Disabled Veteran-Owned Small Business, or Joint Venture (i) for which CVE had approved inclusion in its VetBiz Vendor Information Pages (VIP) database; (ii) that had applied for inclusion in VetBiz VIP; (iii) that CVE had denied, by means of a final denial letter, inclusion in VetBiz VIP; (iv) that CVE denied, by means of an initial denial letter, inclusion in VetBiz VIP; and (v) that withdrew their application for inclusion in VetBiz VIP."  Karnay Decl. ¶ 16; *see id.*, Ex. 9 (November 2014 Request) at 73-77.  By letter dated November 25, 2014, the VA informed Mr. Maryland that it placed his request in the "All Other" fee category and requested payment of $183.08 to process his November 2014 Request.  *Id*., Ex. 10 (2014 Fee Estimate Letter) at 79.  Mr. Maryland paid the requested fee.  Karnay Decl. ¶ 17.

On December 10, 2014, CVE issued an initial agency determination, releasing some of the information requested in November 2014 and concluding that the rest of the requested information was publicly available or subject to withholding pursuant to FOIA Exemptions 5 or 6.  *Id.* ¶ 18.  Consistent with its response to Mr. Maryland's August 2013 Request, "[w]ith regard to email addresses of the businesses initially or finally denied, CVE released the email addresses in part, withholding the names of individuals when they appeared in an email address, based upon FOIA Exemption 6."  *Id.*

Mr. Maryland appealed CVE's December 2014 determination in part.  He appealed CVE's invocation of Exemptions 5 and 6 to withhold records and CVE's referral to other government websites to obtain information in lieu of providing the information itself.  *Id.* ¶ 19, Ex. 12 (2014 Appeal) at 88.  He also requested a refund of the fee paid for records that were not provided to him.  *Id.*

On March 6, 2015, VA OGC issued a final agency decision, upholding CVE's invocation of Exemption 6 as to individual names in email addresses for businesses denied inclusion on the VetBiz database and concluding that "CVE's action with regard to the fee assessment associated with the November 5, 2014 request had been in accordance with the law and agency practice."  *Id.* ¶ 20.  Subsequent to VA OGC's decision, CVE re-evaluated its withholding of information in response to the November 2014 Request and made a supplemental release of information to Mr. Maryland on May 29, 2015 and August 3, 2015.  Def. Reply [Dkt. 53], Second Supp. Decl. of Laurie Karnay (Karnay Supp. Decl.) ¶¶ 8, 11.  CVE continued to withhold personal names in email addresses that were also withheld in response to the August 2013 Request.  Karnay Decl. ¶ 22.

6

### B.  Procedural History

Mr. Maryland filed his original Complaint on August 4, 2014 and filed an Amended Complaint on October 28, 2014, which the Court accepted due to Mr. Maryland's *pro se* status.  *See* 10/28/14 Minute Order.  Mr. Maryland's Amended Complaint alleged two counts. Count One was styled as a request for an injunction against the VA.  Am. Compl. [Dkt. 14] ¶¶ 58-69.  Count Two alleged violations of Mr. Maryland's First Amendment rights and sought monetary damages under 42 U.S.C. § 1983 against VA employees Karen Zhussanbay and Thomas Leney in their personal capacities based on their alleged roles in processing certain FOIA requests.  *Id.* ¶¶ 70-90.[3]  Mr. Maryland moved for leave to file a second amended complaint, *see* Mot. for Leave to Amend [Dkt. 19], which the Court deemed a motion to supplement the pleadings since he sought to add allegations regarding a FOIA request that post-dated the filing of the operative complaint.  The Court denied Mr. Maryland's motion as futile for failure to exhaust his administrative remedies.  *See* Order [Dkt. 28].

On December 19, 2014, Mr. Maryland moved for entry of a preliminary injunction and restraining order against the VA due to his dissatisfaction with how VA's FOIA Officer, Karen Zhussanbay, was handling his FOIA request.  *See* Mot. for PI & Restraining Order [Dkt. 16].  The Court denied his request.  *See* Order [Dkt. 27].  The Court also *sua sponte* dismissed Count Two of the Amended Complaint with prejudice for failure to state a claim upon which relief can be granted and dismissed Ms. Zhussanbay and Mr. Leney as parties to the case. *See* Order [Dkt. 29].

---

[3] Mr. Maryland also asserted a right to attorney fees under the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988.  *Id.*

Mr. Maryland filed a second motion for leave to amend his amended complaint, Dkt. 32, which the Court granted on March 20, 2015. *See* 3/20/15 Minute Order; Second Am. Compl. [Dkt. 33].[4]  The Second Amended Complaint alleges that "Defendant is unlawfully withholding records requested by Plaintiff in FOIA Tracking Number 13-06522-F and FOIA Tracking Number 15-00846-F, both pursuant to 5 U.S.C. §552." Second Am. Compl. ¶ 11.  VA filed an answer to the Second Amended Complaint on April 30, 2015.

VA has moved for summary judgment and Mr. Maryland has cross-moved for summary judgment.[5]  The motions are now ripe for decision.

## II.  LEGAL STANDARD

Summary judgment is justified when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A motion under Rule 56 is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When evaluating cross-motions for summary judgment, each motion

---

[4] Although Mr. Maryland titled this document the "First Amended Complaint," it is properly referred to as the Second Amended Complaint because Mr. Maryland had already filed an amended complaint, *see* Dkt. 14.

[5] VA moves to strike Mr. Maryland's cross-motion for summary judgment as contrary to the Court's May 1, 2015 Minute Order which set a briefing schedule for a single dispositive motion by VA.  *See* 5/1/15 Minute Order; Mot. to Strike [Dkt. 45].  Because the Court will rule on Mr. Maryland's cross-motion for summary judgment, it will deny the motion to strike.  Also pending is Mr. Maryland's second motion for a preliminary injunction and restraining order to enjoin VA from processing Mr. Maryland's current FOIA request (FOIA Tracking Number 15-05308F) until the Court rules on the cross motions for summary judgment, Dkt. 46.  FOIA Tracking Number 15-05308F is not the subject of the instant suit.  The Court will deny Mr. Maryland's motion as moot.

is reviewed "separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." *Family Trust of Mass., Inc. v. United States*, 892 F. Supp. 2d 149, 154 (D.D.C. 2012) (citation and internal quotation marks omitted).  Neither party is deemed to "concede the factual assertions of the opposing motion." *Competitive Enter. Inst. Wash. Bureau, Inc. v. Dep't of Justice*, 469 F.3d 126, 129 (D.C. Cir. 2006) (citation omitted)).  "[T]he court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Am. Ins. Ass'n v. United States HUD*, 2014 WL 5802283, at *5 (D.D.C. Nov. 7, 2014) (internal quotation marks and citation omitted).  A genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980), *aff'd*, *Rushford v. Smith*, 656 F.2d 900 (D.C. Cir. 1981).  In a FOIA case, a court may award summary judgment solely on the basis of information provided by the agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973) (requiring agencies to prepare an itemized index correlating each withheld document, or portion thereof, with a specific FOIA Exemption and the relevant part of the agency's nondisclosure justification).  An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable,

or is wholly [or partially] exempt" from FOIA's requirements. *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation marks and citation omitted).

FOIA also requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b)(9); *see also Oglesby v. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). A district court has "'an affirmative duty to consider the segregability issue sua sponte.'" *Juarez v. Dep't of Justice*, 518 F.3d 54, 60 (D.C. Cir. 2008) (citation omitted).

## III.  ANALYSIS

FOIA obligates Mr. Maryland to exhaust his administrative remedies before he may seek judicial review of his claims in this Court. *See Dettman v. Dep't of Justice*, 802 F.2d 1472, 1476-77 (D.C. Cir. 1986) ("[E]xhaustion of such administrative remedies is required under the Freedom of Information Act before a party may seek judicial review.").  Although Mr. Maryland lodges a range of complaints about CVE's handling of his August 2013 Request and November 2014 Request, this lawsuit is limited to those issues for which Mr. Maryland exhausted his administrative remedies. *See Kenney v. DOJ*, 603 F. Supp. 2d 184, 190 (D.D.C. 2009) ("It is appropriate for the Court to consider only those aspects of plaintiff's request which he properly exhausted.").

### A.  August 2013 Request

Mr. Maryland has been tenacious in his attack on CVE's handling of his FOIA requests.  Mr. Maryland has repeatedly pressed his position that CVE improperly placed him in the commercial fee requester category with respect to his August 2013 Request.  Mr. Maryland also complains that CVE improperly withheld the email addresses of submitters that reveal personal names.  Despite his evident exasperation with CVE over these matters, Mr. Maryland failed to include these allegations in the Second Amended Complaint, thereby waiving them.

*Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) ("[I]f an amended complaint omits claims raised in the original complaint, the plaintiff has waived those omitted claims."). Nonetheless, both parties have strayed outside the pleadings and expend considerable time briefing these issues. In an abundance of caution, the Court will address these issues along with the specific allegations of the Second Amended Complaint.

The Second Amended Complaint alleges that Mr. Maryland sought in his August 2013 Request "a list of those companies that Defendant scheduled or planned to schedule for an on-site inspection" and that the VA has "refused to release the requested information with regards to companies that Defendant site visited." Second Am. Compl. ¶ 5. Mr. Maryland, however, did not appeal this issue to OGC. *See* Karnay Decl. ¶ 15; *id.*, Ex. 8 (Second Appeal) at 55-71. By failing to appeal CVE's determination on this issue to OGC, Mr. Maryland has failed to exhaust his administrative remedies with respect to it and the issue is therefore not subject to judicial review. *See Dettman*, 802 F.2d at 1476-77; *see also Kenney*, 603 F. Supp. 2d at 190.

Mr. Maryland appealed to OGC two issues from CVE's *de novo* review of his August 2013 Request: (1) CVE's placement of his request in the commercial requester category, and (2) CVE's determination to withhold personal names in email addresses under FOIA Exemption 6. Karnay Decl. ¶ 15; *id.*, Ex. 8 (Second Appeal) at 55-71. These are the only two issues that have been exhausted administratively and are subject to judicial review.[6]

---

[6] Mr. Maryland criticizes CVE's "systematic[] fail[ure] to adhere to the requirements of the VA's OGC's November 26, 2013 Remand." Pl. Reply [Dkt. 56] at 11. To the extent Mr. Maryland was dissatisfied with how CVE complied with OGC's November 2013 Remand in conducting its *de novo* review of Mr. Maryland's August 2013 Request, CVE expressly informed Mr. Maryland of his right to appeal CVE's *de novo* January 2014 determinations to OGC. *See* Karnay Decl., Ex. 6 (January 27 Letter Part 1) at 48; *id.*, Ex. 7 (January 27 Letter Part 2) at 52-53. By failing to appeal to OGC any issue other than the two identified, Mr. Maryland failed to exhaust his administrative remedies and is not entitled to judicial review of newly asserted claims here. *See Dettman*, 802 F.2d at 1476-77; *see also Kenney*, 603 F. Supp. 2d at 190.

CVE argues that the issue of Mr. Maryland's fee requester status is moot because CVE did not ultimately charge Mr. Maryland a fee to process the August 2013 Request.  Mr. Maryland responds that the issue is not moot because CVE allegedly "continues to place Plaintiff in the commercial fee category without complying with the VA's OGC's November 26, 2013 Remand."  *See* Pl. Reply [Dkt. 56] at 1.  Mr. Maryland requests a declaration that his use of the requested information qualifies him as a "representative of the news media" and that he "be categorized as a member of the media in all past, present, and future FOIA requests to Defendant."  *See* Cross-Mot. Mem. [Dkt. 43-24] at 5, 11-18; Cross-Mot. at 2.

The "rule against deciding moot cases forbids federal courts from rendering advisory opinions or decid[ing] questions that cannot affect the rights of litigants in the case before them."  *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) (internal citation and quotation marks omitted).  Mr. Maryland hints at the "capable of repetition, yet evading review" exception to the mootness doctrine by arguing that CVE continually places him in the commercial requester category for his other FOIA requests.  "[I]n the absence of a class action, the 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combine [ ]: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."  *Pharmachemie B.V. v. Barr Lab., Inc.*, 276 F.3d 627, 633 (D.C. Cir. 2002) (citing *Weinstein v. Bradford*, 423 U.S. 147 (1975)).  This exception is inapplicable here.  Mr. Maryland has not demonstrated that the challenged action is "in its duration too short to be fully litigated prior to its cessation or expiration."  *Barr*

---

Therefore, VA is entitled to summary judgment on any other issue that Mr. Maryland purports to bring in connection with his August 2013 Request.

*Laboratories, Inc.*, 276 F.3d at 633.  Moreover, Mr. Maryland's contention that CVE continually places him in the commercial requester category is factually incorrect.  CVE placed Mr. Maryland in the "All Other" fee category when processing his November 2014 Request—not the commercial requester category.  *See* Karnay Decl., Ex. 10 (2014 Fee Estimate Letter) at 79.

CVE is correct that the first issue is moot.  A FOIA requester's fee category determines how much an individual is charged by an agency to process a particular FOIA request.  5 U.S.C. § 552(a)(4)(A)(i).  FOIA provides that a representative of the news media may only be charged for document duplication, whereas a commercial requester may be charged for document search, duplication and review.  *See id*. §§ 552(a)(4)(A)(ii)(I)-(II).  Because no fee was ultimately assessed for answering the August 2013 Request, determining whether CVE properly placed Mr. Maryland in the commercial requester category would not affect Mr. Maryland's rights in this case.[7]  Because the "rule against deciding moot cases forbids federal courts from . . . decid[ing] questions that cannot affect the rights of litigants in the case before them," *Hall*, 437 F.3d at 99 (internal citation and quotation marks omitted), the Court will dismiss Mr. Maryland's claim that he was placed in the wrong fee category with respect to his August 2013 Request.  *See also, id*. ("We find that the CIA's decision to release documents to Hall without seeking payment from him moots Hall's arguments that the district court's denial of a fee waiver was substantively incorrect.").  The Court declines to address Mr. Maryland's request to be categorized as a "representative of the news media" because doing so would run counter to the prohibition on issuing advisory opinions.  *Id*.

---

[7] Mr. Maryland claims that CVE can extend the time in which it may deliver documents to him by "approximately one month" by placing him in the commercial fee category.  *See* Pl. Reply [Dkt. 56].  Mr. Maryland provides no support for this statement.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (on a motion for summary judgment, a party may not rely solely on allegations or conclusory statements).

VA invokes FOIA Exemption 6 to withhold the names of individuals that are contained in the email addresses of businesses whose applications were rejected for inclusion on the VetBiz database.[8]  Def. Mot. at 7.  FOIA Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).[9]  This exemption should not be narrowly construed and is "intended to cover detailed Government records on an individual which can be identified as applying to that individual."  *Wash. Post Co.*, 456 U.S. at 602.  To determine whether an agency can rely on Exemption 6 to withhold information, "a court must weigh the privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy."  *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (internal quotation marks and citation omitted).  "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to."  *Id.* (internal quotation marks, alterations and citation omitted). "Information that reveals little or nothing about an agency's own conduct does not further the statutory purpose; thus the public has no cognizable interest in the release of such information."

---

[8] CVE "releases personal names in email addresses on its website regarding businesses that have been approved for inclusion in the CVE's VetBiz VIP database. Those business email addresses are provided by individuals as part of the application process for inclusion in CVE's database and as contact information for the business; in other words, the email provided is the one chosen by the business as a point of contact once approved."  Karney Decl. ¶ 23.

[9] Mr. Maryland claims that the e-mail addresses CVE refuses to release under Exemption 6 do not come from a personnel, medical, or similar file.  *See* Cross-Mot Mem. at 31.  However, the withheld email addresses constitute "similar files" within Exemption 6 because they are contained in "Government records on an individual which can be identified as applying to that individual."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).

*Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (internal quotation marks and citation omitted).

CVE states that it performed the requisite balancing test and concluded that Exemption 6 applies here.  CVE argues that the public interest in an individual's name that appears in an email address is minimal compared with the substantial privacy interest these individuals have in their anonymity.  *See* Karnay Decl. ¶ 13.  CVE maintains that "there may be an unwarranted stigma or negative connotation associated with CVE's denial of a business for inclusion in CVE's database" and that "[t]hese negative references or presumptions would then extend to the individual identified if personal names were released."  Karnay Decl. ¶ 14.

Mr. Maryland argues that CVE invoked Exemption 6 during the administrative process without much elucidation of its rationale for doing so.  By failing to explain its reasons for invoking Exemption 6 at the administrative level, Mr. Maryland insists that CVE is barred from relying on new arguments to defend its invocation of Exemption 6 here.  Mr. Maryland further argues that the privacy interests in this case are *de minimis* because CVE regularly publishes similar information on its website and "all submitters to Defendant's Verification Program are required to register with SAM, which publishes the email addresses of submitters that reveal personal names on its website."  Cross-Mot. Mem. at 35.

Mr. Maryland is incorrect that CVE is limited to arguments it made at the administrative level.  A district court reviews an agency's invocation of FOIA exemptions *de novo*.  *See* 5 U.S.C. § 552(a)(4)(B); *see also War Babes v. Wilson*, 770 F. Supp. 1, 2 (D.D.C. 1990).  The FOIA provision Mr. Maryland cites in support of his argument—Section 552(a)(4)(A)(vii)—applies to the limited issue of fee waivers and not the applicability of a FOIA exemption.  *See* 5 U.S.C. § 552(a)(4)(A)(vii) ("In any action by a requester *regarding the waiver*

*of fees* under this section, the court shall determine the matter de novo: Provided, That the court's

review of the matter shall be limited to the record before the agency.") (emphasis added).

Therefore, the Court will consider CVE's justification for its invocation of Exemption 6 as set

forth in its motion for summary judgment.

The public interest in the release of email addresses containing individual's names

is practically nonexistent.  Releasing individuals' names in email addresses will not serve to shed

light on CVE's conduct.  On the other hand, release of these email addresses would disclose the

names of individuals whose applications for inclusion on the VetBiz database were *denied*.

These individuals may be subject to stigma if they are publicly identified as being connected

with businesses who were denied inclusion in the VetBiz database.  *See Washington Post Co.*,

456 U.S. at 599 ("Congress' primary purpose in enacting Exemption 6 was to protect individuals

from the injury and embarrassment that can result from the unnecessary disclosure of personal

information."); *see also Nat'l Ass'n of Retired Federal Emp. v. Horner*, 879 F.2d 873, 874 (D.C.

Cir. 1989) (agreeing to withholding of an individual's name and address under Exemption 6 in

context of individual's status as a federal annuitant).  There is no inconsistency in protecting

these email addresses even though the email addresses of submitters whose applications were

approved are publicly disclosed on the VetBiz database.  By applying to have their business

profiles included on the VetBiz database, submitters consent (expressly or impliedly) to the

public display of their email addresses.  However, it does not follow that individuals whose

applications have been *denied* and whose information is therefore not published on the VetBiz

database waive their privacy interest in their identities and email addresses.  Further, Mr.

Maryland's unsubstantiated claim that all submitters' email addresses are publicly available

through the "SAM" website does not suffice to create a genuine issue of material fact that defeats

summary judgment.  *See Military Audit Project*, 656 F.2d at 738 (plaintiff must controvert agency affidavits "by either contrary evidence in the record []or by evidence of agency bad faith").  On balance, given the complete lack of public interest in disclosure, release of the email addresses would work "a clearly unwarranted invasion of personal privacy."  *Lepelletier*, 164 F.3d at 46; *Horner*, 879 F.2d at 879 (concluding that "even a modest privacy interest, outweighs nothing every time").  Therefore, the Court concludes that the email addresses at issue fall within the scope of Exemption 6 and CVE may withhold them.  The Court will grant judgment to VA as to Mr. Maryland's August 2013 Request.

Finally, Mr. Maryland requests expenses he incurred in the administrative appeal of his August 2013 Request.  FOIA does not provide for the recovery of attorney fees incurred during the administrative process.  *See, e.g.*, 5 U.S.C. § 552(a)(4)(E)(i) (The "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any *case* under this section in which the complainant has substantially prevailed.") (emphasis added); *Queen Anne's Conservation Ass'n v. U.S. Dep't of State*, 800 F. Supp. 2d 195, 201 (D.D.C. 2011) ("FOIA does not authorize fees for work performed at the administrative stage.") (citation omitted).  In addition, Mr. Maryland proceeds *pro se* and thus has not incurred attorney fees in bringing his appeal.  *See, e.g.*, *Benavides v. Bureau of Prisons*, 993 F.2d 257, 258-60 (D.C. Cir. 1993) (holding that *pro se* litigants may not recover attorney fees under FOIA).

### B.  November 2014 Request

CVE contends that "the only issues that Mr. Maryland appealed and which remain in contention concern CVE's withholding of personal names in emails under exemption 6 and Mr. Maryland's request for a refund of his fee payment based on his dissatisfaction with the response that he received."  Def. Mot. at 11.  CVE maintains that it made a supplemental release of information on May 29, 2015 and August 3, 2015 that satisfies the only outstanding claim

from the November 2014 Request that have been administratively exhausted.  *Id.*; *see also* Karnay Supp. Decl. ¶¶ 8, 11.  As before, Mr. Maryland argues that CVE cannot withhold email addresses under Exemption 6.  He also contends that CVE has yet to release all of the records to which he is entitled, despite its supplemental May 29, 2015 release.

       Mr. Maryland offers no rejoinder to CVE's argument that his dissatisfaction with the results of his November 2014 Request does not entitle him to a refund of the processing fee. *See generally* Pl. Reply.  Therefore, the Court deems the argument conceded.  *See, e.g.*, *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (a court may treat arguments plaintiff failed to address as conceded in deciding summary judgment motions), *aff'd sub nom. Hopkins v. Women's Div., Gen. Bd. of Global Ministries, United Methodist Church*, 98 F. App'x 8 (D.C. Cir. 2004).  As it did with the August 2013 Request, the Court will uphold CVE's invocation of Exemption 6 to withhold email addresses that identify an individual whose application for inclusion on the VetBiz database was denied.  *See supra* pp. 15-17.

       Mr. Maryland complains that CVE's supplemental May 29, 2015 production was incomplete because it provided only three items of information out of the fifteen items of information requested in the November 2014 Request.  CVE acknowledges that it only released three items of information in its supplemental release, but explains that

> CVE had *already released the remaining 12 items requested* for those categories of businesses in December 2014; as a result of the May 2015 release, therefore, he had then received *all 15 items of information requested* for the categories of businesses denied by final and initial denial letter for the period of time covered by CVE's initial response.

Karnay Supp. Decl. ¶ 10 (emphasis in original).  Mr. Maryland does not dispute that he already received twelve out of the fifteen items of information requested in his November 2014 Request or that he received the three remaining items of requested information.  *See generally* Pl. Reply.

Mr. Maryland contends that CVE used the incorrect cut-off date for its supplemental May 2015 release.  CVE responds that

> CVE interpreted the May 2015 release as a supplemental release pursuant to the November 2014 request.  Accordingly, CVE released the information for the same time period covered by the November 2014 request, i.e., October 20 to November 20, 2014. The May 2015 supplemental release, therefore, essentially "completed" the prior release in response to the November 2014 request; Mr. Maryland already had received most of the other information requested when CVE provided a response in December 2014.  In making the May 29, 2015 release, CVE released all of the *remaining* information requested by Mr. Maryland in his November 2014 request, except personal names in email addresses, for the period from October 20, 2014 to November 20, 2014.

Karnay Supp. Decl. ¶ 9.  However, based on Mr. Maryland's cross-motion for summary judgment, CVE

> understands, however, that Mr. Maryland believed that the release in May 2015 would include the thirty days prior to the release.  In light of the apparent misunderstanding regarding which thirty-day period applied, CVE made an amended supplemental release on August 3, 2015.

*Id*. ¶ 11.  In its supplemental August 3, 2015 production, CVE

> released the same information that it released on May 29, 2015 (i.e., information withheld from the initial release with the exception of personal names in email addresses which it continues to withhold under Exemption 6 for the reasons stated in my June 2015 declaration), but for the period covering the thirty days prior to May 29, 2015.

*Id*; *see also id*., Exhibit 3 (August 3, 2015 Letter).  Mr. Maryland makes no objections to CVE's August 3, 2015 production.  *See generally* Pl. Reply.  As such, there is no genuine dispute as to any material fact that CVE has satisfied its obligations under FOIA in responding to Mr.

Maryland's November 2014 Request.  CVE has demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt" from FOIA's requirements.  *Goland*, 607 F.2d at 352.  Therefore, the Court will grant judgment to VA as to Mr. Maryland's November 2014 Request.

### C.  Segregability

The Court has an affirmative obligation to consider whether any portion of the information CVE withheld pursuant to Exemption 6 is segregable and subject to release.  *See Juarez*, 518 F.3d at 60 (D.C. Cir. 2008).  Even if an agency properly withholds responsive records under a FOIA exemption, it nevertheless must disclose any non-exempt information that is "reasonably segregable." 5 U.S.C. § 552(b); *Mead Data Cent.*, 566 F.2d at 260 (D.C. Cir. 1977) ("It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.").  "The question of segregability is by necessity subjective and context-specific, turning upon the nature of the documents and information in question."  *Am. Civil Liberties Union v. U.S. Dep't of State*, 878 F. Supp. 2d 215, 225 (D.D.C. 2012) (citing *Mead Data Cent.*, 566 F.2d at 261).  Because of the discrete nature of the information withheld under Exemption 6—email addresses—the Court is satisfied that there are no reasonably segregable portions of that information that can or must be released.  The Court will not order CVE to release the "@" symbol or the domain of each withheld email address.  *See Mead Data Cent.*, 566 F.2d at 261 n. 55 (A district court need not "order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content.").

### D.  Adequacy of Search

In passing, Mr. Maryland argues that he is entitled to summary judgment because CVE did not conduct a reasonable search for records.  *See* Cross-Mot. [Dkt. 43] at 1.  The Second Amended Complaint does not allege that CVE's search in response to either the August 2013 Request or November 2014 Request was inadequate.  Only those claims in the operative complaint are before the Court.  *Jo v. Dist. of Columbia*, 582 F.Supp.2d 51, 64 (D.D.C. 2008) ("It is well-established in this district that a plaintiff cannot amend his Complaint in an opposition to a defendant's motion for summary judgment."); *Sharp v. Rosa Mexicano, D.C., L.L.C.,* 496 F.Supp.2d 93, 97 n. 3 (D.D.C. 2007) (stating that plaintiff may not, "through summary judgment briefs, raise [ ] new claims . . . because [the] plaintiff did not raise them in his complaint"); *accord Gilmour v. Gates, McDonald and Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that claims raised for the first time in an opposition to a motion for summary judgment are not properly before the court).  Neither party briefed this issue.  Therefore, the Court will not address this allegation, raised for the first time in Mr. Maryland's cross-motion for summary judgment.

## IV.  CONCLUSION

VA's motion for summary judgment, Dkt. 42, will be granted and Mr. Maryland's cross-motion for summary judgment, Dkt. 43, will be denied.  Judgment will be entered in favor of VA.  VA's motion to strike Mr. Maryland's cross-motion for summary judgment, Dkt. 45, and Mr. Maryland's second motion for a preliminary injunction and restraining order, Dkt. 46, will be denied as moot.  A memorializing Order accompanies this Opinion.

Date: September 17, 2015

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge